FILED
2026 May-29  PM 03:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| NICK WILLIS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 3:26-CV-00722-HDM** |
| | ) | |
| KALSHI, INC., et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**

Plaintiff Nick Willis submits the following in support of his motion to remand this case to the Circuit Court of Franklin County, Alabama, from which it was improvidently removed. The motion to remand is filed contemporaneously herewith.

## I.    Introduction

Plaintiff brings this case under an Alabama statute that allows "any other person" to bring an action to recover money lost at illegal gambling for the use of the spouse, children, or next of kin of the gambler. Ala. Code § 8-1-150. In a number of similar cases brought under the same statute, this Court, in the person of Judge Burke, correctly held that these cases are not class actions and that the potential recoveries of absent parties cannot be aggregated to meet the $75,000 amount-in-controversy threshold. Mills v. Playtika, Ltd., 2025 WL 44266 at *7 (N.D. Ala. Jan.

1

7, 2025). It is clear that this court cannot exercise diversity or CAFA jurisdiction, as plaintiff will explain in detail in Section III, infra.

Kalshi argues in its Notice of Removal that the court has federal question jurisdiction because its gambling contracts are supposedly "swaps" or commodities governed by the Commodities Futures Trading Commission ("CFTC"). Kalshi's defense of this case is entirely predicated on the idea that calling a bet or wager a futures contract renders it immune from gambling laws. From there, it makes the equally absurd contention that whether or not betting on the outcome of contingent events constitutes gambling depends on first determining under federal law whether the wagers are commodities transactions. This argument ignores the well-pleaded complaint rule, "which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (citing Gully v. First National Bank, 299 U.S. 109, 112-113 (1936). Because Kalshi is attempting to shoehorn this case into federal jurisdiction based on the supposed existence of a federal defense, no such jurisdiction exists here. The argument that this case involves federal officer jurisdiction because the CFTC could regulate the gambling contracts if they were actually commodities swaps is equally unavailing. Plaintiff explains in detail in Section IV, infra, why no federal question or officer jurisdiction exists in this case.

**II.    Defendant Bears the Burden of Demonstrating Federal Jurisdiction**

Federal courts have limited subject matter jurisdiction, strictly enumerated by congressional enactments defining the district courts' jurisdiction pursuant to Article III of the United States Constitution. University of South Alabama v. American Tobacco Co., 168 F.3d 405, 409-410 (11th Cir. 1999).

> It is by now axiomatic that the inferior federal courts are courts of limited jurisdiction. They are empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution, and which have been entrusted to them by a jurisdictional grant authorized by Congress. . . . And because the Constitution unambiguously confers this jurisdictional power to the sound discretion of Congress, federal courts should proceed with caution in construing constitutional and statutory provisions dealing with their jurisdiction.

Id. (internal quotations and citations omitted).

It is for this reason that removal jurisdiction must be strictly construed against the exercise of federal jurisdiction.

> Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09, 61 S. Ct. 868, 872, 85 L. Ed. 1214 (1941). Indeed, **all doubts** about jurisdiction should be resolved in favor of remand to state court.

Id. at 411 (citing Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) (emphasis supplied)). "When jurisdiction is premised on the diversity of the parties, the court is obligated to assure itself that the case involves the requisite amount in controversy. Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1261 (11th Cir. 2000).

3

Indeed, "Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; for example, unlike the rules applied when plaintiff has filed suit in federal court with a claim that, on its face, satisfies the jurisdictional amount, removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." Burns, 31 F.3d at 1095.

It is likewise uncontroversial that "in removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." Kirkland v. Midland Mortg. Co., 243 F.3d 1277, 1281 n.5 (11th Cir. 2001). "A party removing a case to federal court based on diversity of citizenship bears the burden of establishing that the parties are diverse and the $75,000 amount in controversy jurisdictional threshold is met." Shah v. Borden, 2015 WL 4159948 at *2 (N.D. Ga. 2015) (citing Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F. 3d 1020, 1022 (11th Cir. 2004); Fowler v. Safeco Ins. Co. Of Am., 915 F. 2d 616, 618 (11th Cir. 1990).

Thus, it is clear that the removing defendant, Kalshi, bears the burden of demonstrating that federal jurisdiction exists. This it cannot do.

### III.    This Court Does Not Have Diversity or Class Action Jurisdiction

This court does not have subject-matter jurisdiction pursuant to 28 U.S.C. § 1332, either under traditional diversity jurisdiction, or pursuant to the Class Action Fairness Act ("CAFA"). Traditional jurisdiction under section 1332(a) does not exist

4

because the amount-in-controversy threshold of $75,000 has not been reached. CAFA jurisdiction does not exist because this is not a class action.

### A. Plaintiff brings these claims on behalf of absent family members, whose claims cannot be aggregated to reach $75,000.

As plaintiff's complaint makes clear, and as Section 8-1-150(b) requires, the claims in this case are brought "for the use of the wife or, if no wife, the children or, if no children, the next of kin of the loser." Ala. Code § 8-1-150(b). This Court has squarely held that it lacks diversity jurisdiction over claims brought under this section because the potential recoveries of absent parties cannot be aggregated:

> Accordingly, this Court finds that the non-aggregation doctrine applies here and precludes aggregation for the calculation of the amount in controversy. By seeking to recover "for the use of" the losers' families, Rice asserts numerous individual claims. But those claims do not share a common and undivided interest. The family of each Alabama citizen who lost money playing Aristocrat's games of chance has an individual or separate interest in recovering that loss. To use the example Rice sets forth in her brief, a wife whose husband lost $40,000 seeks to recover $40,000, and the next of kin of a citizen who lost $1.99 seeks to recover $1.99. (Doc. 12 at 11.) Those interests do not overlap and do not affect each other. Thus, the individual claims cannot be aggregated for the purposes of establishing the requisite amount for diversity jurisdiction.

Rice v. Aristocrat Leisure, Ltd., 2023 WL 5198510 at *5 (N.D. Ala. Aug. 11, 2023) (see also Mills v. Playtika, Ltd., 2025 WL 44266 at *6 (N.D. Ala. Jan. 7, 2025) (citing Rice and finding "no reason to depart from its analysis of this issue").

Judge Burke's holdings in Rice and Mills are firmly supported by the Supreme Court's holding in Snyder v. Harris, 394 U.S. 332, 335 (1969) establishing the non-

aggregation doctrine, and several decisions dealing with private attorney general statutes and other situations where one individual or entity brings suit for the benefit of a number of others. See, e.g., Breakman v. AOL LLC, 545 F. Supp. 2d 96, 103 (D.D.C. 2008) (applying non-aggregation doctrine and granting motion to remand); Nat'l Consumers League v. Flowers Bakeries, LLC, 36 F. Supp. 3d 26, 29 (D.D.C. 2014) (same); Urbino v. Orkin Servs. of Cal., 726 F.3d 1118, 1122 (9th Cir. 2013) (overturning district court's denial of motion to remand in action brought under California's Labor Code Private Attorneys General Act.). As Judge Burke noted, the Rice case, like the one before the court, has an "identical" framework to these precedents: "there is a single plaintiff acting in a representative capacity to recover damages that would be payable to non-parties." Rice, 2023 WL 5198510 at *5. It is clear that the non-aggregation principle applies in such circumstances, and federal diversity jurisdiction does not exist.

### B. This case is not a class action, and CAFA jurisdiction does not apply.

This Court has also held that cases brought under Section 8-1-150(b) are not class actions, and that CAFA jurisdiction does not exist. Mills v. Playtika, Ltd., 2025 WL 44266 at *4 (N.D. Ala. Jan. 7, 2025) (Burke, J.). In Mills, Judge Burke first examined the jurisdictional statute, finding that "CAFA defines a class action to be a civil action filed under a state court's analogue of Fed. R. Civ. P. 23 or a state court's 'rule of judicial procedure authorizing an action to be brought by 1 or more

6

representative persons as a class action.'" Id. (quoting 28 U.S.C. § 1332(d)(1)(B)). Next, the court noted that "Mills did not file her lawsuit in state court under Alabama's version of Fed. R. Civ. P. 23." Id. Finally, the court rejected the argument that the case was "in substance a class action," because Section 8-1-150 contains none of the prerequisites found in Rule 23 for maintaining a class action. Id. at *5. Thus, the court held, "the present case does not meet the definition of a class action as described in § 1332(d)." This case is identical in posture to Mills. Because the case is not a class action, the court cannot exercise jurisdiction over it pursuant to CAFA.

Like its holding regarding traditional diversity jurisdiction, this Court's determination that cases brought under Section 8-1-150(b) are not class actions rests upon strong support from caselaw around the country. See, e.g., Baumann v. Chase Investment Services Corp., 747 F.3d 1117 (9th Cir. 2014) (case brought by employee on his own behalf and on behalf of other employees under state private attorney general statute is not a class action because the state PAGA action does not have the "hallmarks of Rule 23 class actions; namely, adequacy of representation, numerosity, commonality, typicality, or the requirement of class certification."); Coquina Crossing Homeowners Association, Inc. v. MHC Operating Limited Partnership, 2022 WL 843582 (M.D. Fla. 2022) (statutory action by homeowners association on behalf of its members is not a removable class action under CAFA because the statute

7

"does not contain any of the hallmark requirements of a traditional class action.");

Purdue Pharma L.P. v. Kentucky, 704 F.3d 208 (2d Cir. 2013) (affirming remand of

case brought by state under state statute allowing state to sue on behalf of its citizens

because the statute "imposes none of the familiar hallmarks of Rule 23 class actions,

namely, adequacy of representation, numerosity,, commonality, typicality, or the

requirement of class certification"); Minnesota v. American Petroleum Institute, 63

F.4th 703 (8th Cir. 2023) (in case against petroleum companies by the state of

Minnesota asserting statutory claims on behalf of Minnesota residents harmed by

the companies' misconduct, remand to state court affirmed because state statute did

not require the core Rule 23 requirements to be satisfied for the state to bring suit);

Nessel ex rel. Michigan v. Amerigas Partners, L.P., 954 F.3d 831 (6th Cir. 2020) (in

case brought by state attorney general seeking damages for Michigan citizens

harmed by the defendants' violation of Michigan statutes, remand affirmed because

state statute did not require compliance with Rule 23, stating "These four

requirements—numerosity, commonality, typicality, and adequate representation—

are the defining characteristics of Rule 23."); West Virginia ex rel. Mcgraw v. CVS

Pharmacy, Inc., 646 F.3d 169 (4th Cir. 2011) (in case brought by the West Virginia

Attorney General against pharmacies under state statutes authorizing the state to

bring cases on behalf of state citizens who overpaid for prescription drugs, remand

affirmed because state statute was not similar to Rule 23 as it did not require

8

numerosity, commonality,, typicality, and adequate representation, the "minimum" requirements for a state statute to be similar to Rule 23 under CAFA).

Because this case is not a class action, the court cannot exercise CAFA jurisdiction. No basis for federal jurisdiction exists under traditional diversity or CAFA. As will be explained in the following section, there is likewise no basis for federal question jurisdiction, and the case is due to be remanded to the Circuit Court of Franklin County.

### IV.    This Court Does Not Have Federal Question Jurisdiction

Despite the complaint being entirely clear that its single claim is brought under state law, namely Section 8-1-150(b) of the Alabama Code, Kalshi argues that this court has federal question jurisdiction. Because plaintiff's well-pleaded complaint does not arise under federal law, Kalshi's contention is incorrect. Furthermore, as multiple courts around the country have already held, Kalshi cannot force this case brought under state gambling laws into federal court by raising a federal defense and arguing that plaintiff's claim necessarily depends on resolution of a substantial question of federal law. Finally, Kalshi's argument that the court has jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442 has likewise been rejected by multiple courts. No federal jurisdiction exists in this case, which is due to be remanded to the Circuit Court of Franklin County, Alabama.

**A. Federal question jurisdiction pursuant to 28 U.S.C. § 1331 does not exist.**

    1. <u>Plaintiff's well-pleaded complaint does not arise under federal law.</u>

Even Kalshi admits that Nick Willis did not bring this claim under federal law. As the complaint makes entirely clear, plaintiff brings a single claim pursuant to an Alabama statute, namely Section 8-1-150(b) of the Alabama Code. Thus, the case does not meet the basic standard for federal question jurisdiction, known as the well-pleaded complaint rule. This rule, as expressed by the United States Supreme Court, states that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987) (citing <u>Gully v. First National Bank</u>, 299 U.S. 109, 112-113 (1936).

Kalshi cannot manufacture a federal question by raising a federal defense, because "a Court's inquiry into the presence of federal question jurisdiction is limited to the allegations found in the plaintiff's well-pleaded complaint." <u>Citimortgage, Inc. v. Dhinoja</u>, 705 F. Supp. 2d 1378, 1381 (N.D. Ga. 2010). See also <u>Ohio Gambling Recovery, LLC v. Kalshi, Inc.</u>, 2026 WL 865788 at *2 (N.D. Ohio Mar. 30, 2026) ("To determine whether [a] claim arises under federal law, we examine the well pleaded allegations of the complaint and ignore potential defenses") (quoting <u>Mikulski v. Centerior Energy Corp.</u>, 501 F.3d 555, 560 (6th Cir.

2007) (bracketed material original to <u>Ohio Gambling Recovery</u>). Courts, including the United States Supreme Court and multiple circuit Courts of Appeal, have made it clear that a federal defense is not sufficient to create federal jurisdiction. <u>See, e.g.,</u> <u>Citimortgage</u>, 705 F. Supp. 2d at 1381 ("If a federal question is not presented on the face of the complaint, 'it is no substitute that the defendant is almost certain to raise a federal defense.'") (quoting <u>Pan Am. Petroleum Corp. v. Superior Court of Delaware</u>, 366 U.S. 656, 663 (1961)); <u>Roody v. Grand Trunk Western R.R., Inc.</u>, 395 F.3d 318, 322 (6th Cir. 2005) ("It is settled law that 'a case may *not* be removed to federal court on the basis of a federal defense … even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.") (quoting <u>Caterpillar</u>, 482 U.S. at 393) (emphasis original); <u>Community State Bank v. Strong</u>, 651 F.3d 1241, 1258 (11th Cir. 2011) ("Anticipated federal defenses are irrelevant") (citing <u>Vaden v. Discover Bank</u>, 556 U.S. 49, 59 (2009) ("Federal jurisdiction cannot be predicated on an actual or anticipated defense: 'it is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of [federal law]'") (quoting <u>Louisville & Nashville R. Co. v. Mottley</u>, 211 U.S. 149 (1908) (bracketed material original to <u>Vaden</u>).

2. Federal jurisdiction does not exist under any exception to the well-pleaded complaint rule.

Here, there can be no doubt that plaintiff asserts his claims under a state law, Section 8-1-150(b) of the Alabama Code. No federal claim appears on the face of the complaint or is implicated by its contents. Therefore, no federal question jurisdiction exists unless the case fits within a narrow exception to the well-pleaded complaint rule. Two possible exceptions exist, both of which have been argued by Kalshi and rejected by multiple courts, as plaintiff will detail below

***Alabama's Gambling Laws are Not Preempted by the CEA***

First, Kalshi's argument that its event contracts are subject to the exclusive jurisdiction of the CFTC under the Commodities Exchange Act ("CEA") could be read as an argument that Congress has preempted all state regulation of futures contracts, even when they amount to gambling wagers on the outcome of sporting events. Again, multiple courts have rejected this argument, with two Ohio courts adopting the following reasoning:

> The Southern District of Ohio reached the opposite conclusion, holding that the CEA did not preempt Ohio's sports-gambling laws. KalshiEX LLC v. Schuler, No. 2:25-cv-1165, 2026 WL 657004, at *4 (S.D. Ohio Mar. 9, 2026). First, the court rejected Kalshi's efforts to define event contracts as "swaps" governed by the CEA and within the CFTC's exclusive jurisdiction. Id. at *6. The court explained that the term "swap," in the context of the CEA, "involve[s] financial instruments and measures that traditionally and directly affect commodity prices" such as "[c]urrency exchange rates, the weather, and energy costs," not bets on "the number of points scored in the Huskies-Bobcats game[.]" Id. The court further explained that if event contracts were "swaps," as

12

Kalshi argued, then all sportsbooks "would be forced onto DCMs like Kalshi" leading to an absurd result. Id. Second, the court concluded that enacting gambling laws is "clearly a proper exercise of the state's police power" and, "[i]t would thus be 'inappropriate' to treat the CEA as preempting Ohio's sports gambling laws without first finding that Congress had the 'clear and manifest purpose' to do so." Id. at *8 (citations omitted).

Ohio Gambling Recovery, 2026 WL 865788 at *5. The Eastern District of Kentucky likewise found no preemption, grounding its holding in precedent on the issue:

The Supreme Court has found complete preemption in only three classes of cases: Section 301 of the Labor Management Relations Act of 1947 (LMRA), the Employee Retirement Income Security Act of 1975 (ERISA), and the National Bank Act. Mikulski, 501 F.3d at 563–64. Complete preemption is a limited rule, and courts across the country recognize that the Commodities Exchange Act does not completely preempt state law claims. See, e.g., Dennis v. Hart, 724 F.3d 1249, 1254 (9th Cir. 2013) ("[T]he Exchange Act does not so fully displace state law as to invoke complete preemption"); see also W & W Farms, Inc. v. Chartered Sys. Corp. of New York, 542 F. Supp. 56, 60 (N.D. Ind. 1982) (action based on a state statute is not preempted where the statute envisioned no administrative agency involvement which might conflict with the Commodity Futures Trading Commission's jurisdiction); see also 79A C.J.S. Securities Regulation § 645 ("[a]lthough many types of state-law actions are not preempted by the Commodity Exchange Act, some are").

Kentucky Gambling Recovery LLC v. Kalshi, Inc., 2026 WL 596107 at *3 (E.D. Ky. Mar. 4, 2026).

Additional courts have likewise rejected Kalshi's preemption argument. Nevada ex rel. Nevada Gaming Control Bd. v. KalshiEX, LLC, 2026 WL 579364 at *5 (D. Nev. Mar. 2, 2026) ("Because the Court finds that Congress did not intend for the CEA to completely displace the Board's state law claims, removal was improper

under the complete preemption doctrine."); <u>KalshiEX LLC v. Johnson</u>, 2026 WL 958171 at *6 (D. Ariz. Apr. 8, 2026) (refusing to grant Kalshi declaratory judgment on preemption or enjoin state criminal case against it); <u>KalshiEX LLC v. Martin</u>, 793 F. Supp. 3d 667, 679 (D. Md. 2025) ("Here, the structure, context and legislative history of the CEA do not support Kalshi's argument, let alone establish that Congress clearly and manifestly intended to preempt state sports-betting laws."); <u>Illinois Gambling Recovery, LLC v. Kalshi Inc.</u>, 2026 WL 1164703 at *6 ("To the extent that defendants argue that the Commodities Exchange Act preempts state gambling law on event contracts… that is an affirmative defense not within the scope of the well-pleaded complaint.")

### *Kalshi Cannot Meet the Substantial Federal Question Exception to the Well-Pleaded Complaint Rule*

A narrow exception to the well-pleaded complaint rule exists such that certain cases are deemed to arise under federal law "if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law." <u>Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust</u>, 463 US 1, 133 (1983). The United States Supreme Court has made it clear that this exception applies to a "slim category" of cases. <u>Empire Healthchoice Ass., Inc. v. McVeigh</u>, 547 U.S. 677, 701 (2006) ("In sum, <u>Grable</u> emphasized that it takes more than a federal element 'to open the arising under door'. This case cannot be squeezed into the slim category <u>Grable</u> exemplifies") (internal citations removed) (citing

14

Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 313 (2005).

The Supreme Court refined the category described by Grable in 2013's Gunn v. Minton, which held that four requirements must be met: (1) the federal issue must be "necessary" to resolution of the case; (2) the federal issue must be "actually disputed"; (3) the federal issue must be substantial, looking at "the importance of the issue to the federal system as a whole"; and (4) the issue must be capable of resolution without upsetting "the federal-state balance designed by Congress." 568 U.S. 251, 258-260 (2013).

Again, multiple courts have specifically held that, in cases brought under state gambling laws, Kalshi cannot meet the requirements of this exception and demonstrate federal jurisdiction. The supposed federal issue here, which Kalshi argues is necessary, disputed, and substantial, is that Kalshi claims that the bets placed on its app are "futures contracts" approved by the CFTC. Kalshi argues that Alabama's gambling laws do not apply to such contracts, and that plaintiff must prove that the transactions do not fall into this exception. In dealing with cases against Kalshi brought under similar state gambling laws, multiple courts have disagreed, finding that the purported federal approval of the transactions constitutes an affirmative defense, rather than an element of plaintiff's claim. The Kentucky court explained this in detail:

"When a statute has 'exemptions laid out apart from the prohibitions,' and the exemptions "expressly refe[r] to the prohibited conduct as such,' the exemptions ordinarily constitute 'affirmative defense[s]' that are 'entirely the responsibility of the party raising' them." Cunningham v. Cornell University, 604 U.S. 693, 701, 145 S.Ct. 1020, 221 L.Ed.2d 591 (2025) (quoting Meacham v. Knolls Atomic Power Laboratory, 554 U.S. 84, 91, 128 S.Ct. 2395, 171 L.Ed.2d 283 (2008)). This framework applies to Kentucky's Loss Recovery Act. The statute exempts "betting, gaming, or wagering that has been authorized, permitted, or legalized[.]" Ky. Rev. Stat. § 372.005. The viability of Plaintiff's claim hinges on the legality of events contracts under the CEA as applied to Kentucky's gambling restrictions. In the 2023 Kirby decision, the Kentucky Court of Appeals held that the plaintiffs in that case were not entitled to relief under the Loss Recovery Act because "the plain language of [the safe harbor] provision means that no cause of action will lie where the challenged wagering was authorized, permitted, or legalized (retroactively or otherwise)." Kirby, 672 S.W.3d at 216. The Court affirmed the lower court's order dismissing the case. Id. at 217. The logical reading of this holding suggests that the safe harbor provision arms defendants with a Rule 12(b)(6) defense, or its state-law equivalent.

Defendants raise compelling defenses to the Plaintiff's state-law claim. But they are, nonetheless, defenses. The Court is convinced that Plaintiff's well-pleaded complaint does not contain a federal issue on its face, and that Defendants' reference to the Commodity Exchange Act vis-à-vis the Loss Recovery Act's safe harbor provision is merely a possible or anticipated defense.

Kentucky Gambling Recovery, 2026 WL 596107 at *5. The court continued:

Plaintiff relies on the basis that Defendants' activities are illegal under Kentucky state law and that Defendants simply raise a defense that is not sufficient for federal question jurisdiction. [R. 20-1 at 6–7]. Between these two competing theories, it is not clear that the Plaintiff's theory raises a disputed federal issue. Plaintiff has not—and could not—argue that the Commodity Exchange Act is somehow unlawful. See generally [R. 1-1]. Instead, it advances the argument that the Defendants' conduct is illegal under Kentucky's laws criminalizing unlawful gambling activity. Id. at 19–21, 103 S.Ct. 2841. This does not

16

necessarily raise a federal issue, even if the parties may, in all likelihood, spar over the applicability of the CEA to the Loss Recovery Act's safe harbor provision.

Id. Similarly, the Ohio court stated:

> Against this backdrop, the Court finds that discernment of Plaintiff's state-law claim does not "'require the analysis and interpretation of federal law' but rather [the analysis and interpretation of] the federal law's impact on [Ohio] state law." See Ky. Gambling Recovery LLC, 2026 WL 596107, at *6 (citing Mikulski, 501 F.3d at 571). Specifically, Defendants argue that the exception under Ohio Rev. Code § 2915.02(C) applies because the event contracts at issue are permitted under federal law. ECF No. 30 at PageID #: 253; ECF No. 31 at PageID ##: 281–82. Any analysis regarding the legality of the event contracts under the CEA relates to the applicability of an exemption under Ohio law, not federal law. See Ohio Rev. Code § 3763.01(B); Ohio Rev. Code § 2915.02(C).

Ohio Gambling Recovery, 2026 WL 865788 at *7. In the same fashion, any analysis of whether the exception in Alabama's gambling laws for legitimate futures contracts applies to bets about the outcome of sporting events is necessarily an analysis of Alabama law, not federal law.

Courts have likewise found Kalshi's argument defective with regard to the other factors in Gunn. The Illinois court, for example, found that "the final two factors—substantiality and capability of resolution without disrupting the congressionally approved balance of federal and state judicial responsibilities— point in favor of remand. Illinois Gambling Recovery, 2026 WL 1164703 at *7. This was so because "[w]hether these defendants are exempt from a state gambling law is not an important issue to the federal system as a whole." Id.; see also Ohio

17

Gambling Recovery, 2026 WL 865788 at *8 (finding the balance of state and federal interests weighed in plaintiff's favor because "[t]hat federal law-based defenses may be available to Defendants does not outweigh the state of Ohio's interests in enforcing its own gambling statutes."); Nevada Gaming Control Bd., 2026 WL 579364 at *3 ("Kalshi argues that the Board's claims rely on interpretation of the CEA, an argument the Board argues is a preemption defense… But a federal issue raised as an anticipated preemption defense is not sufficient to give rise to federal question jurisdiction.").

In Washington v. KalshiEX, LLC, the District Court summarily rejected the idea that Kalshi met the substantial federal issue exception:

> A substantial federal issue is one that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disturbing the federal-state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013) (citing Grable, 545 U.S. 313–14). For myriad reasons, Defendant does not satisfy these requirements. For one, the complaint seemingly only targets activities determined to be gambling under state law, namely conduct described in the Washington Gambling Act, RCW § 9.46, and the Money Lost at Gambling Act, RCW § 4.24.070. (See Dkt. No. 1-2 at 18–19.) It is well established that gambling regulation is within a state's police powers (and that states have significant social and other interests in regulating such activity). See Murphy v. Natl. Collegiate Athletic Assn., 584 U.S. 453, 484 (2018); Ah Sin v. Wittman, 198 U.S. 500, 505–06 (1905). Removal, undoubtedly, would disturb the federal-state balance provided by Congress. For this reason (amongst others), there is no substantial federal issue. Given how evident this is, the Court declines to address other Gunn requirements.

18

2026 WL 1217743 at *1 (W.D. Wash. May 5, 2026). This ultimate conclusion is shared by the vast majority of courts to address whether Kalshi meets the substantial federal issue exception to the well-pleaded complaint rule, and thus whether federal courts have jurisdiction over these cases. Kentucky Gambling Recovery, 2026 WL 596107 at *7 ("Mindful that state courts are presumed competent to apply federal law and that any doubts regarding federal jurisdiction should be construed in favor of remanding the case to state court, the Court ultimately finds that *the federal issue in this case is not substantial*") (emphasis supplied); Ohio Gambling Recovery, 2026 WL 865788 at *8 ("Tallying the above, the substantial federal question doctrine does not apply in this case and the Court lacks federal-question jurisdiction under § 1331."); Nevada Gaming Control Bd., 2026 WL 579364 at *4 ("Accordingly, the Court finds that the Board's claims do not necessarily raise an issue of federal law as Grable requires, and the Court therefore lacks subject matter jurisdiction over the Board's state law claims.").

Like the courts cited, this Court should reject Kalshi's attempt to invoke the substantial federal question doctrine and find that federal question jurisdiction does not exist. This case should be remanded to the Circuit Court of Franklin County.

### B. Federal officer removal jurisdiction pursuant to 28 U.S.C. § 1442 does not exist here.

Kalshi also argues that removal was somehow proper under 28 U.S.C. § 1442, the federal officer removal statute. This statute primarily allows an officer or agency

19

of the United States to remove a case against them in their official capacity to federal court. 28 U.S.C. § 1442(a)(1). Kalshi, of course, is not an officer or agency of the United States. It attempts to argue that it fits into subsection (a)(2) of the statute, which allows removal by "[a] property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States." In other words, it argues that because it claimed that the sports bets it offered were "futures contracts" or "commodities swaps" governed by the CFTC, it somehow took title to the property it obtained from Alabama citizens under those pretenses through the CFTC itself. Necessarily, to fit within this statute, it also argues that if a court determines that these bets are illegal gambling rather than futures contracts governed by the CFTC, that somehow calls into question the validity of the Commodities Exchange Act. In reality, such a finding would simply hold that the Act did not apply to Kalshi's gambling activities, and its constitutionality or validity would not be affected.

Once again, multiple courts have rejected this convoluted theory of Kalshi's and found that federal jurisdiction does not apply to these cases. The Washington Court, for example, stated that "removal pursuant to 28 U.S.C. § 1442 is inappropriate. Nothing in this case suggests Plaintiff is directly attempting to interfere with Defendant's CFTC dealings." Washington v. KalshiEX, 2026 WL 1217743 at *2. Specifically regarding subsection (a)(2) of the federal officer removal

20

statute, the court found that it is not "implicated by Defendant's CFTC dealings." Id. The court went on to state that "[i]n every instance where courts have applied § 1442(a)(2), they did so in instances where real—not intangible—property was at issue." Id. (citing St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC, 809 F. Supp. 2d 524, 535 (E.D. La. 2011); Town of Davis v. W. Virginia Power and Transmission Co., Inc., 647 F. Supp. 2d 622, 624 (N.D. W.Va. 2007); Benitez-Bithorn v. Rossello-Gonzalez, 200 F. Supp. 2d 26, 28-31 (D.P.R. 2002). The court declined to adopt Kalshi's "novel argument" and remanded the case to state court.

In the Nevada case, Kalshi asserted that the CFTC should have been a party to the case, which would have made removal proper under Section 1442(a)(1). Nevada Gaming Control Bd., 2026 WL 579364 at *5. The court went on to state that "[t]he Board is not trying to enforce Nevada gaming law – or any state law – against the CFTC and the CFTC does not face any legal exposure from the relief sought." Id. at *6. The same is true here with regard to plaintiff's claims under Alabama law. The conclusion should be the same as well, and the Nevada court stated, "[i]n sum, the Court rejects Kalshi's argument that the CFTC is a necessary party to invoke jurisdiction under the federal officer removal statute." Id. The Nevada court then remanded the case to state court. This Court should do the same.

## CONCLUSION

21

Kalshi's convoluted attempts to fit this case into federal jurisdiction must be rejected, as they have been by courts in Washington, Ohio, Kentucky, Nevada, and Illinois, which each remanded the case to state court. Plaintiff submits that these cases are well-reasoned and rightly decided. The Court should remand this case to the Circuit Court of Franklin County, Alabama.

Respectfully submitted this 29th day of May, 2023,

/s/    Dargan M. Ware
One of the attorneys for Plaintiff

**COUNSEL:**
John E. Norris
D. Frank Davis
Wesley W. Barnett
Dargan M. Ware
DAVIS & NORRIS, LLP
Telephone: 205.930.9900
Facsimile: 205.930.9989
jnorris@davisnorris.com
fdavis@davisnorris.com
wbarnett@davisnorris.com
dware@davisnorris.com

Jeffrey L. Bowling
BEDFORD, ROGERS & BOWLING, P.C.
303 North Jackson Street
P.O. Box 669
Russellville, AL 35653-0669
Telephone: 256.332.2880
jeffbrbpc@bellsouth.net