FILED
2026 Sep-08 PM 03:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHWESTERN DIVISION**

**NICK WILLIS,**

**Plaintiff**,

**v.**

**KALSHI, INC.,** ***et al.*****,**

**Defendants**.

**Case No. 3:26-cv-722-HDM**

**MEMORANDUM OPINION**

Before the court is Plaintiff Nick Willis's Motion to Remand. (Doc. 12). Defendants oppose the motion, (doc. 14), and Willis has replied, (doc. 15). Defendants rely on federal-question jurisdiction under 28 U.S.C. § 1331 and the property-holder provision of the federal-officer removal statute, 28 U.S.C. § 1442(a)(2). Neither ground supplies subject-matter jurisdiction. Accordingly, the motion is due to be **GRANTED**.

## I. BACKGROUND

Willis filed this action in the Circuit Court of Franklin County, Alabama, on March 20, 2026. The complaint alleges that Alabama residents use Defendants' online "prediction market" to purchase event contracts tied to sporting outcomes,

including game winners, point spreads, combined scores, and player propositions. (Doc. 1-1, ¶¶ 26–30). According to Willis, those transactions are wagers prohibited by Alabama law, notwithstanding Defendants' characterization of them as federally regulated futures, swaps, or options. (*Id.*, ¶¶ 26–28, 33–40).

Willis asserts one cause of action under Ala. Code § 8-1-150(b). That provision states:

> Any other person may also recover the amount of such money, thing, or its value by an action commenced within 12 months after the payment or delivery thereof for the use of the wife or, if no wife, the children or, if no children, the next of kin of the loser.

Ala. Code § 8-1-150(b). Willis alleges that he is an "other person" authorized to recover money lost by Alabama customers for their statutory beneficiaries. (Doc. 1-1, ¶ 40). He seeks money allegedly lost on Defendants' platform during the relevant period, excluding losses attributable to any customer who lost $75,000 or more. (*Id.*, ¶¶ 1, 40, 48 & Prayer for Relief).

The removal papers state that the Commodity Futures Trading Commission ("CFTC") has designated KalshiEX LLC as a designated contract market ("DCM") and registered Kalshi Klear LLC as a derivatives clearing organization ("DCO") under the Commodity Exchange Act ("CEA"). (Docs. 1-2; 1-3); *see* 7 U.S.C. §§ 7, 7a-1. Subject to statutory and regulatory requirements, a DCM may self-certify a new contract for trading. 7 U.S.C. § 7a-2(c)(1); 17 C.F.R. § 40.2. The CEA grants the CFTC exclusive jurisdiction over certain transactions involving swaps or

futures that are traded or executed on a DCM. 7 U.S.C. § 2(a)(1)(A). It also addresses contracts involving enumerated subjects, including "gaming." *Id.* § 7a-2(c)(5)(C); 17 C.F.R. § 40.11.

Defendants contend that the challenged sports-event contracts are swaps governed exclusively by the CEA and that Alabama gambling law therefore cannot be applied to them. They removed the action on April 29, 2026. (Doc. 1). Willis moved to remand on May 29, 2026. (Doc. 12). The motion is timely. *See* 28 U.S.C. § 1447(c).

## II. GOVERNING LAW

A defendant may remove a state-court action only if the federal district court would have had original jurisdiction over it. 28 U.S.C. § 1441(a). The removing defendants bear the burden of establishing federal jurisdiction. *Schleider v. GVDB Operations, LLC*, 121 F.4th 149, 155 (11th Cir. 2024); *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008). Jurisdiction is determined at the time of removal. *Adventure Outdoors*, 552 F.3d at 1294–95. Federal courts must examine subject-matter jurisdiction independently, and "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction," the action must be remanded. 28 U.S.C. § 1447(c); *see* Fed. R. Civ. P. 12(h)(3).

The ordinary removal statute is construed in light of the federalism concerns implicated by removal, and uncertainties concerning jurisdiction are resolved in favor of remand. *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). Section 1442 is construed more liberally because of the distinct federal interests it protects. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007). But liberal construction does not relieve a removing party of satisfying the provision's statutory requirements. *Id.* at 152–57.

## III. DISCUSSION

### A. Grounds Not Relied Upon

Willis devotes part of his opening brief to traditional diversity jurisdiction, the Class Action Fairness Act, and complete preemption. Defendants respond that those issues are "red herrings" because they removed on none of those grounds. (Doc. 14 at 2–3). The court therefore does not treat diversity, CAFA, or complete preemption as asserted bases for removal. Defendants' statement is not a concession on the merits of those doctrines; it limits the grounds on which they defend removal. The court addresses the two grounds Defendants invoke.

### B. Federal-Question Jurisdiction

#### *1. The well-pleaded complaint rule and the Grable–Gunn exception*

District courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether an action arises under federal law is ordinarily determined by the well-pleaded complaint rule: a federal question must appear on the face of the plaintiff's properly pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). A federal defense—including an ordinary preemption defense—does not create arising-under jurisdiction, even if the complaint anticipates the defense and even if the defense may prove dispositive. *Id.* at 393; *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10–14 (1983).

A "special and small category" of state-law claims nevertheless arise under federal law because a substantial federal issue is embedded in the state cause of action. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). Jurisdiction exists under that doctrine only when the federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* All four requirements must be satisfied for a court to properly exercise federal-question jurisdiction under the Grable–Gunn exception. *Id.*

The Eleventh Circuit recently applied those principles in *Schleider*. The complaint there asserted state statutory claims, while the defendants contended that the Public Readiness and Emergency Preparedness Act supplied federal immunity and preempted the claims. *Schleider*, 121 F.4th at 154–55. As the court held, those potential defenses did not create embedded federal-question jurisdiction: "a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint." *Id.* at 167 (quoting *Caterpillar*, 482 U.S. at 393) (emphasis omitted). The same rule governs here.

*2. The CEA issue is not necessarily raised by Willis's claim*

Alabama law, not federal law, creates Willis's sole claim. Section 8-1-150(a) permits a person who "paid any money or delivered any thing of value lost upon any game or wager" to recover it if the action is timely commenced. Section 8-1-150(b) permits an "other person" to recover "such money" for the loser's spouse, children, or next of kin during a longer statutory period.

The Alabama Supreme Court has explained that a subsection (b) claim is derivative of the gambler's subsection (a) claim. *Zynga, Inc. v. Mills*, 431 So. 3d 935, 941–43 (Ala. 2025). A subsection (b) plaintiff can prevail only if the gambler could have prevailed under subsection (a) and therefore stands in the gambler's "legal shoes." *Id.* Thus, Willis must establish the matters Alabama law requires:

payment or delivery of money or value, loss upon a game or wager, the derivative right to recover that same loss, and compliance with the statutory period. Nothing in the text of section 8-1-150 makes the classification of the transactions under the CEA an element of that claim.

Defendants answer that Willis must prove an "illegal gambling contract" and cannot do so without establishing that the contracts are not valid federally regulated swaps. But placing the state-law burden of proving a wager on Willis does not convert every potential federal justification or preemption defense into an element of his affirmative case. Willis can attempt to prove, under Alabama law and the facts alleged, that customers risked money on sporting outcomes and lost that money upon games or wagers. Defendants can answer that the CEA authorizes or exclusively governs those transactions. That answer may ultimately defeat the claim, but it remains a federal defense.

The complaint's references to the CEA, swaps, futures, and the CFTC do not change the character of the claim. (*See* Doc. 1-1, ¶¶ 26–28). Willis invokes no federal cause of action and seeks no relief for violation of the CEA. The references instead anticipate and dispute Defendants' expected federal-law position. Anticipatory allegations do not avoid the well-pleaded complaint rule. *Caterpillar*, 482 U.S. at 393; *Schleider*, 121 F.4th at 167.

Nor does *Bryant v. Starkey*, 39 So. 2d 291 (Ala. 1949), establish that the CEA is an element of this claim. *Bryant* involved facially valid cotton-futures contracts traded on the New York Cotton Exchange. *Id.* at 292–93. Against the specialized statutory background then governing Alabama contracts for future delivery, the court applied the presumption that a contract fair on its face is valid and placed on the party asserting illegality the burden to plead and prove otherwise. *Id.* at 293. Its statement that a facially valid contract is referred "to the law that will sustain it—that sanctions its validity" addressed that state-law presumption. *Id.* It did not hold that every gambling-loss plaintiff must negate any potentially applicable federal regulatory defense as an element of a section 8-1-150 claim.

The other Alabama authorities Defendants cite do not supply the missing federal element. *Bussey v. Macon County Greyhound Park, Inc.* recognized, in the context of the parties' agreement, that the existence of a wager contract was essential to the asserted state claim. No. 3:10-cv-00191-WKW, 2011 WL 1216296, at *10 n.12 (M.D. Ala. Mar. 31, 2011). No federal law was at issue. *Bussey*, 2011 WL 1216296. *Osborn v. Pointer* was an action to collect a dishonored check in which the defendant asserted gambling illegality; it recited the general rule that the party seeking to defeat a facially valid contract bears the burden of proving

illegality. 128 So. 2d 530, 531 (Ala. Ct. App. 1961). Neither case makes federal law part of Willis's affirmative case.

At most, Defendants have identified a contested federal question that may arise in adjudicating a defense. Federal law is not "necessarily raised" when it enters only through a defense. *Schleider*, 121 F.4th at 166. Because necessity is absent, the *Gunn* test is not satisfied.

*3. The remaining Gunn considerations do not establish jurisdiction*

The parties genuinely dispute the scope and effect of the CEA. But the substantiality inquiry concerns "the importance of the issue to the federal system as a whole," not merely its importance to the litigants. *Gunn*, 568 U.S. at 260. Even assuming the classification and preemption questions meet that demanding standard, jurisdiction still fails because the federal issue is not necessarily raised and the congressionally approved federal-state balance does not favor federal adjudication of this state cause of action.

The United States and the CFTC are not parties here. Willis does not challenge a CFTC order, seek to invalidate agency action, or ask the court to declare any provision of the CEA invalid. A judgment concerning these parties and transactions would not bind the CFTC or control federal adjudications of the CEA. *See Gunn*, 568 U.S. at 261–64. In contrast, the court in *Grable* had federal-question jurisdiction where the case involved interpretation of a federal notice

statute and directly implicated the Government's ability to recover delinquent taxes through its own administrative action. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005).

The Eleventh Circuit's decision in *Adventure Outdoors* is instructive. There, state-law defamation claims required consideration of federal firearms law, but the court held that the federal questions did not carry the systemic importance necessary for embedded jurisdiction and warned against expanding federal jurisdiction across ordinary state-law actions. *Adventure Outdoors*, 552 F.3d at 1298–1302. Likewise here, the possible application of the CEA matters greatly to these parties, but the state court's resolution of a federal defense does not by itself threaten the uniform development of federal law. State courts are competent to adjudicate federal defenses, subject to review by the Supreme Court.

The federal-state balance independently favors remand. Contract validity and gambling regulation are matters of traditional state concern. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 484 (2018). Accepting Defendants' jurisdictional theory would bring into federal court a broad range of state gambling, contract, and consumer actions whenever a federally regulated entity asserts that its conduct is authorized or preemptively protected by federal law. Nothing in the CEA suggests that Congress intended that jurisdictional result. Congress enacted a limited private-action provision, 7 U.S.C. § 25, but Defendants

do not rely on complete preemption. The balance contemplated by *Gunn* does not support treating ordinary CEA preemption as an embedded jurisdictional element.

Most courts to consider comparable removals involving Kalshi have reached the same conclusion. *See, e.g.*, *Kentucky Gambling Recovery LLC v. Kalshi Inc.*, No. 3:25-cv-00054-GFVT, 2026 WL 596107, at *4–7 (E.D. Ky. Mar. 4, 2026); *Ohio Gambling Recovery, LLC v. Kalshi Inc.*, No. 4:25-cv-01573, 2026 WL 865788, at *6–8 (N.D. Ohio Mar. 30, 2026); *Illinois Gambling Recovery, LLC v. Kalshi Inc.*, No. 1:25-cv-11374, 2026 WL 1164703, at *5–8 (N.D. Ill. Apr. 29, 2026). Those decisions are persuasive rather than controlling, and the statutory schemes and pleadings differ. Their shared application of the well-pleaded complaint rule nevertheless reinforces the conclusion reached here.

Defendants principally rely on *Georgia Gambling Recovery LLC v. Kalshi Inc.*, No. 4:25-cv-00310-CDL, 2026 WL 279375 (M.D. Ga. Feb. 3, 2026), which denied remand. That decision is distinguishable in two respects. First, the Georgia complaint expressly alleged that the challenged transactions violated the federal Wire Act. *Id.* at *1, *3 n.3. Willis pleads no federal violation. Second, the Georgia court relied on Georgia choice-of-law precedent holding that a gambling contract's invalidity depended on the law governing the contract. *Id.* at *2–3 (discussing *Talley v. Mathis*, 453 S.E.2d 704 (Ga. 1995)). Alabama's controlling explanation of section 8-1-150 in *Zynga* instead identifies the derivative state-law recovery

described above. 431 So. 3d at 941–43. To the extent *Georgia Gambling Recovery* reasons that a potentially dispositive CEA preemption issue is itself enough to establish necessity, this court respectfully disagrees because that reasoning cannot be reconciled with *Schleider* and the well-pleaded complaint rule.

The court expresses no view on the ultimate classification of Defendants' sports-event contracts, whether the challenged products were lawfully self-certified, or the merits of Defendants' CEA preemption defense. Those questions concern the merits, not removal jurisdiction. Because all four *Gunn* requirements are not satisfied, section 1331 does not provide jurisdiction.

**C. Section 1442(a)(2)**

Defendants alternatively rely on section 1442(a)(2), which permits removal by "[a] property holder whose title is derived from any [federal] officer, where such action or prosecution affects the validity of any law of the United States." 28 U.S.C. § 1442(a)(2). This rarely invoked provision has four requirements: "(1) an action [was] instituted in state court; (2) the action [is] against or directed to the holder of a property right; (3) the property right [is] derived from a federal officer; and (4) the action would 'affect' the validity of a federal law." *Vermont v. MPHJ Technology Investments, LLC*, 803 F.3d 635, 647 (Fed. Cir. 2015).

Defendants identify KalshiEX's DCM designation and Kalshi Klear's DCO registration as the relevant property. They argue that those regulatory entitlements

are intangible property derived from the CFTC. Willis responds that section 1442(a)(2) has historically applied to real property and cannot reach a regulatory designation.

The court need not decide whether a DCM designation or DCO registration qualifies as "property" to which a holder has "title" within the specialized meaning of section 1442(a)(2). Cases recognizing licenses as property in due-process or fraud contexts do not necessarily resolve that textual question. *See, e.g.*, *Pastrana v. United States*, 746 F.2d 1447, 1450 (11th Cir. 1984). On the other hand, the statute does not expressly limit "property" to real property. The court therefore assumes, without deciding, that the designation and registration satisfy the property and derivation requirements. Removal still fails because Willis's action does not "affect[] the validity" of federal law.

Willis does not challenge the legal force of the CEA, seek invalidation of any CEA provision, or ask the state court to revoke either entity's federal status. An adverse judgment could affect Defendants' ability to offer particular products in Alabama and could require adjudication of their preemption defense. But the CEA, the DCM designation, and the DCO registration would remain legally valid whichever party prevails. At most, the action presents questions about federal law's meaning and application, not its validity.

That distinction gives effect to Congress's words. Section 1442(a)(2) does not authorize removal whenever a federally derived property holder raises a federal defense. Otherwise, the clause requiring an effect on the validity of federal law would do no independent work. A conflict-preemption defense asks whether valid federal law displaces state law; it does not place the federal law's own validity in dispute.

*MPHJ Technology Investments* provides a useful analogy. A patent holder argued that a state consumer-protection action frustrated rights secured by the Patent Act and therefore affected the Act's validity. *MPHJ Technology Investments*, 803 F.3d at 647–49. The Federal Circuit affirmed remand because the state complaint did not place at issue the state patent-assertion statute on which the asserted federal conflict depended. *Id.* at 648–50. The court declined to decide whether patents were qualifying property because the absence of an effect on federal law was dispositive. *Id.* at 651–52. Likewise, Willis's complaint does not challenge the CFTC's designation orders or the legal validity of the CEA. Defendants' assertion that the CEA preempts Alabama law is a defense, not an attack by Willis on federal law itself.

Defendants cite *Carney v. Washington*, 551 F. Supp. 3d 1042 (W.D. Wash. 2021), for a broader understanding of "affects." But *Carney* involved a suit directly challenging possession of tribal land whose title was derived through a federal trust

patent; the asserted state-law claim would have circumvented federal statutes governing that title. *Id.* at 1047–54. Here, the regulatory designations themselves are not the object of the suit, and a judgment would leave both the designations and the CEA intact.

The Supreme Court's recent decision in *Chevron U.S.A. Inc. v. Plaquemines Parish*, 608 U.S. ___, 146 S. Ct. 1052 (2026), does not alter the analysis. *Chevron* interpreted section 1442(a)(1)'s separate requirement that an action be "for or relating to" an act under color of federal office. *Id.* at 1057–64. It did not consider subsection (a)(2), much less its distinct requirements concerning property, derived title, and the validity of federal law. Liberal construction of section 1442 cannot transfer subsection (a)(1)'s "relating to" language into subsection (a)(2).

The only court the parties identify as having considered Kalshi's same subsection (a)(2) theory rejected it. *Washington v. KalshiEX LLC*, No. 2:26-cv-01062-JCC, 2026 WL 1217743, at *2–4 (W.D. Wash. May 5, 2026). This court does not adopt that decision's suggestion that section 1442(a)(2) is categorically confined to real property. It agrees, however, that an action contesting the lawfulness of sports-event contracts does not thereby affect the validity of the CEA or Defendants' federal designations.

Defendants expressly state that they "did not remove under" section 1442(a)(1). (Doc. 14 at 12 n.6). That distinct "acting under" provision is therefore

not before the court and supplies no alternative basis for retaining the case. Section 1442(a)(2) does not authorize removal.

## IV. CONCLUSION

Neither section 1331 nor section 1442(a)(2) supplies original jurisdiction. Because subject-matter jurisdiction is absent, section 1447(c) requires remand. The court does not reach the classification of the event contracts, the merits of Defendants' CEA preemption defense, or any additional question concerning Willis's Article III standing. A separate order will be entered.

**DONE** and **ORDERED** on September 8, 2026.

**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE